UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lowes Foods, LLC, ) | Civil Action No.: 4:16-cv-00354-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| Burroughs & Chapin Company, Inc., ) | |
| Grand Dunes Development Company, LLC, ) | |
| and Myrtle Beach Farms Company, Inc., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the parties' cross motions for summary judgment. [ECF Nos. 71 & 73]. For the reasons stated below, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.[1]

## Background

On September 15, 2006, Plaintiff Lowes Foods, LLC ("Lowes") and Defendant Grand Dunes Development Company, LLC ("GDDC") entered into a lease agreement ("Lease") for property to be used as a location for a Lowes Foods retail grocery store. [Complaint, ECF No. 1, at ¶ 9].

Lowes alleges that Burroughs & Chapin Company, Inc. ("B&C"), who is the parent company of Defendants GDDC and Myrtle Beach Farms Company, Inc. ("MBF"), was developing the area as the Grande Dunes community. *Id*. at ¶ 11. The new Lowes Foods grocery store was to be located at the Grande Dunes Marketplace, 970 Cipriana Drive, Myrtle Beach, South Carolina. *Id*. at ¶ 9.

In negotiating the Lease, Lowes alleges that it discussed with Defendants two critical issues

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

regarding the Lease and the new grocery store. First, it was important to Defendants that the Lowes store at the Grande Dunes development be a high quality, "four-star project" befitting an upscale shopping center. Second, it was critical to Lowes that the Lease contain a "radius restriction" protecting Lowes from the development of a competing grocery store within a two-mile radius of the Lowes store at Grande Dunes. *Id*. at ¶ 12.

Lowes alleges the radius restriction was the subject of communications between Jeffrey LeForce, Chief Commercial Real Estate Officer for B&C, and Roger Henderson, Vice President of Real Estate for Alex Lee, Inc., which is Lowes's corporate parent. *Id*. at ¶¶ 13-20. Lowes viewed the communications between LeForce and Henderson to be a clear representation by Defendants that (1) they knew the importance of the radius restriction to Lowes, (2) they knew Lowes would not enter into the Lease if it thought its sales might be diminished as a result of a competing grocery store within the radius restriction, and (3) they knew the radius restriction must be effective throughout the term of the Lease.[2] *Id*. at ¶ 21.

Lowes alleges that it signed the Lease on November 3, 2006, in reliance on the representation that the radius restriction would be effective throughout the term of the Lease. *Id*. at ¶ 22.

Section 7.4.3 of the Lease (the "radius restriction") provides:

> In addition, Landlord, any entity which controls, is controlled by or under common control with Landlord, any entity which acquires all or substantially all of Landlord's assets, or Landlord's affiliates, successors or assigns (collectively, the "Landlord Entities"), shall not (directly or indirectly) develop a supermarket on any property within a radius of two (2) miles from any portion of the Demised Premises; provided, however, at any time after the seventh (7th) anniversary of the Commencement Date, Landlord and each of the

---

[2] The term of the Lease commenced on September 17, 2008, and is scheduled to expire on September 16, 2028. [Complaint, ECF No. 1 at ¶ 10].

2

> Landlord Entities may develop a grocery store with up to 25,000
> square feet on any property within such radius other than property
> owned by Landlord or any of the Landlord Entities that is
> contiguous to the Center.

[Lease, ECF No. 1-1 at 28-29].

Lowes alleges it would not have entered into the Lease without the radius restriction and the Defendants knew the radius restriction must remain effective throughout the term of the Lease to adequately protect Lowes's interests. [Complaint, ECF No. 1 at ¶ 24]. Lowes alleges that it made a greater than normal financial investment in the Lowes store at Grande Dunes to comply with Defendants' demand that the Lowes store at Grande Dunes be a high-end, "four star" store befitting an upscale shopping center. *Id*. at ¶ 25.

Lowes alleges that in or about December 2013, B&C sold a substantial amount of its property within the Grande Dunes development to LStar Management ("LStar"). Included in the sale was a tract of land owned by MBF, located at the northwest corner of 82nd Avenue North and North Kings Highway in Myrtle Beach (the "New Development"), which was also within the two-mile radius restriction in the Lowes Lease. MBF's sale of the "New Development" to LStar did not include a restriction like the one included in the Laniado Deed.[3]

On October 31, 2014, LStar, along with a company called Crosland Southeast, issued a press

---

[3] Discovery in this case revealed that in February 2010, MBF conveyed a 4.6 acre tract of land within the two-mile radius restriction to members of the Laniado family. [Laniado Deed, ECF No. 79-2]. The 4.6 acre tract (the "Laniado Tract") was conveyed with the following restriction on land use:
> The Grantee shall not, directly or indirectly, develop a supermarket on the property
> until October 1, 2015 after which time the Grantee may develop a grocery store with
> up to 25,000 square feet, as set forth in that certain Memorandum of Lease between
> Grande Dunes Development Company, LLC and Lowe's Food Stores, Inc. dated
> September 15, 2006 and recorded December 20, 2006 in Deed Book 3205 at Page
> 1836.

[Laniado Deed, ECF No. 79-2 at 8].

3

release stating its intention to develop a new commercial center at the New Development, anchored by a grocery store of approximately 45,000 square feet. [Complaint, ECF No. 1 at ¶ 28; Deposition of Steven Vining, ECF No. 95-3 at 43].

Lowes states that a 45,000 square foot Publix grocery store at the New Development is now open and operating less than a mile from the Lowes store, in violation of the radius restriction. *Id*. at ¶ 34; Henderson Depo. at 146.

Lowes filed this case on February 4, 2016, against Defendants Burroughs & Chapin Company, Inc. ("B&C"), Grande Dunes Development Company, LLC ("GDDC"), and Myrtle Beach Farms Company, Inc. ("MBF"), asserting four claims for relief: 1) fraud in the inducement; 2) breach of contract; 3) breach of contract accompanied by a fraudulent act; and 4) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140.

On August 31, 2018, Defendants filed a motion for summary judgment as to all of Lowes's claims. Lowes filed a cross-motion for summary judgment on its breach of contract claim. In its brief in response to Defendants' motion for summary judgment, Lowes indicated that it is not proceeding on its claim for fraud in the inducement. The motions have been fully briefed and are ripe for review.

## **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Discussion**

I.  Breach of Contract

Lowes alleges Defendants B&C, MBF, and GDDC breached their contractual obligations under Section 7.4.3 of the Lease Agreement ("'radius restriction") by directly or indirectly developing a supermarket, through the sale of the New Development to LStar, on property within a two mile radius of the Lowes store. [Complaint, ECF No. 1 at ¶ 48]. Lowes further alleges that Defendants breached the duty of good faith and fair dealing implied in the Lease by, among other

5

things, failing to protect Lowes from a competing grocery store in the manner required by the Lease and as was expected by the parties at the time the Lease was formed. *Id*. at ¶ 49.

The elements of a breach of contract claim are "the existence of a contract, its breach, and damages caused by such breach." *Hotel and Motel Holdings, LLC v. BJC Enterprises, LLC*, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015).

With respect to the first element, it is undisputed that there is a contract between Lowes and Defendant GDDC. Defendants, however, argue there is no contract between Lowes and B&C or MBF; therefore, B&C and MBF cannot be held liable for breach of contract. Generally, an individual who is not a party to a contract cannot be held liable for its breach. *Trancik v. USAA Ins. Co.*, 581 S.E.2d 585, 861 (S.C. Ct. App. 2003). However, the existence of a contract is ordinarily a question of fact for the jury. *Stevens and Wilkinson of South Carolina, Inc. v. City of Columbia*, 762 S.E.2d 696, 701 (S.C. 2014).

Lowes argues that B&C and MBF are liable for the alleged breach of contract because they are "Landlord Entities" under Section 7.4.3 of the Lease Agreement. Section 7.4.3 of the Lease Agreement provides that, in addition to the Landlord, *any entity which controls, is controlled by or under common control with Landlord*, any entity which acquires all or substantially all of Landlord's assets, or Landlord's affiliates, successors or assigns (collectively, the "Landlord Entities"), *shall not (directly or indirectly) develop a supermarket on any property within a radius of two (2) miles from any portion of the Demised Premises*. [Lease Agreement, ECF No. 1-1 at 28]. Thus, Lowes argues that B&C and MBF, as "Landlord Entities" that either control or are under common control with the Landlord, are bound by Section 7.4.3 of the Lease Agreement and are liable for its alleged breach.

6

The language of Section 7.4.3 is sufficient to create a question of fact as to whether the parties intended for Landlord Entities such as B&C and MBF to be bound by the Lease Agreement and liable for its breach. Defendants do not dispute that B&C controls GDDC and that MBF is under common control with GDDC through B&C. Based on the language of Section 7.4.3, a reasonable juror could find a contract exists between Lowes and each of the Defendants.

Lowes argues that Defendants breached both the clear terms of the Lease and also the implied covenant of good faith and fair dealing when they sold land to LStar without making any attempt to preserve the restriction on competing grocery stores in the Lease. Lowes also argues Defendants breached Section 7.4.3 of the Lease by "indirectly" developing the New Development where the Publix is located.

Defendants respond that the Lease Agreement does not require Defendants to encumber property that they owned within the restricted area. Defendants also argue that they did not directly or indirectly develop the competing Publix grocery store and that the mere sale of land to LStar does not constitute development.

Under South Carolina law, there exists in every contract an implied covenant of good faith and fair dealing. *Adams v. G.J. Creel and Sons, Inc.*, 465 S.E.2d 84 (S.C. 1995); *Parker v. Byrd*, 420 S.E.2d 850 (S.C. 1992).

> A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used and external facts, such as the surrounding circumstances; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face.
>
> In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order

7

> to carry out the purpose for which the contract was made.
>
> . . .
>
> The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made.
>
> It has been said that implied promises always exist where the covenant on one side involves some corresponding obligation on the other; where, by the relationships of the parties and the subject matter of the contract, a duty is owing by one not expressly bound by the contract to the other party in reference to the subject thereof.

*Boddie-Noell Properties, Inc. v. 42 Magnolia Partnership*, 544 S.E.2d 279, 284-85 (S.C. Ct. App. 2000) (quoting *Commercial Credit Corp. v. Nelson Motors, Inc.*, 147 S.E.2d 481, 484 (S.C. 1966)).

In this case, there is a question of fact as to whether the parties intended for the Defendants to preserve the restriction on competing grocery stores and include restrictive language encumbering other property sold by them within the radius restricted area. Defendants correctly assert that restrictions on the use of property must be created in express terms or by plain and unmistakable implication. *Taylor v. Lindsey*, 498 S.E.2d 862, 864 (S.C. 1998). However, viewing the evidence in the light most favorable to Lowes, there is a question of fact as to whether the restriction sought by Lowes was implied.

Section 7.4.4 of the Lease Agreement indicates that the covenants set forth in Section 7.4 "shall run with the land for the duration of the Term." [Lease Agreement, ECF No. 1-1 at 29]. This language, at the very least, creates an ambiguity as to whether the restriction on competing grocery stores was meant to extend to property sold by a Landlord Entity within the restricted area. The phrase "run with the land" is not defined and it is not clear whether the land referred to includes

8

only the shopping center where the Lowes store is located or all of the land within the radius restricted area.

A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation. *South Carolina Dept. of Nat. Resources v. Town of McClellanville*, 550 S.E.2d 299, 302 (S.C. 2001). It is a question of law for the court whether the language of a contract is ambiguous. *Town of McClellanville*, 550 S.E.2d at 302-03. Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties. *Id*. at 303. The determination of the parties' intent is then a question of fact. *Id*. Here, the meaning and extent of Section 7.4.4 of the Lease Agreement, as well as its effect on Section 7.4.3 of the Lease Agreement, is ambiguous. Whether the parties intended for Section 7.4.4 to restrict the use of all of the land within the radius restricted area requires a determination of the parties' intent and is a question of fact for the jury.

B&C's internal memorandum authored by Terry Lewis, commercial property manager for B&C, indicates that B&C believed the radius restriction "would greatly limit our ability to develop another center or sell land to another developer." [Terry Lewis Memo, ECF No. 95-10 at 3]. Similarly, Tony Cox, the Executive Vice President for Real Estate at B&C, testified that his understanding of the radius restriction was that if B&C "sold land to another developer, we would have to make sure that it wasn't a, a competing grocery store put there." [Cox Depo, ECF No. 95-5 at 18]. Terry Lewis's Memo and Tony Cox's testimony shed light on the parties' understanding of the terms of the contract and suggest an intent to restrict future purchasers of property within the restricted area from developing a competing supermarket, but this is for the jury to determine.

Favorable to the Plaintiff is the fact that Defendants sold a piece of property in 2010,

9

referred to as the Laniado Tract, and included restrictive language in the deed to the Laniados that was designed to prevent the Laniados from developing a competing grocery store in violation of the Lowes radius restriction. Specifically, in February 2010, MBF conveyed a 4.6 acre tract of land within the two-mile radius restriction to members of the Laniado family. [Laniado Deed, ECF No. 79-2]. The 4.6 acre tract (the "Laniado Tract") was conveyed with the following restriction on land use:

> The Grantee shall not, directly or indirectly, develop a supermarket on the property until October 1, 2015 after which time the Grantee may develop a grocery store with up to 25,000 square feet, as set forth in that certain Memorandum of Lease between Grande Dunes Development Company, LLC and Lowe's Food Stores, Inc. dated September 15, 2006 and recorded December 20, 2006 in Deed Book 3205 at Page 1836.

[Laniado Deed, ECF No. 79-2 at 8]. The Laniado transaction indicates that Defendants, at least in 2010, believed the Lease Agreement required them to prevent the development of any competing supermarket within the radius restriction during the term of the Lease, even if the property was sold to another individual or entity.

Lowes has submitted sufficient evidence to create a question of fact as to whether Defendants breached Section 7.4.3 of the Lease Agreement when they sold land to LStar and did not include restrictive language in the deed to prevent the development of a competing supermarket.

The Court also finds a question of fact as to whether Defendants indirectly developed the Publix when they sold the land to LStar. The phrase "indirectly develop a supermarket" is not defined in the Lease Agreement and its meaning is ambiguous. While this claim appears favorable to the Defendants based on the LStar transaction with Crosland (who developed the competing Publix) being somewhat attenuated and removed from the lease transaction with GDDC and Lowes,

10

the parties' intent with regard to the meaning of the phrase "indirectly develop a supermarket" is a question of fact for the jury.

Defendants' motion for summary judgment is denied as to Lowes's breach of contract claim. Likewise, Lowes's motion for summary judgment on its breach of contract claim is also denied. There is a genuine issue of material fact as to the existence of a contract between Lowes and B&C and MBF. There are also genuine issues of material fact as to whether Defendants breached the Lease Agreement.

II.     Breach of Contract Accompanied by a Fraudulent Act

Lowes has asserted a claim against Defendants for breach of contract accompanied by a fraudulent act. In order to maintain a claim for breach of contract accompanied by fraudulent act, a plaintiff must prove three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract, not merely to its making; and (3) a fraudulent act accompanying the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503–04 (S.C. Ct. App. 1985). Fraudulent intent is normally proved by circumstances surrounding the breach. *Floyd*, 336 S.E.2d at 503–04.   The fraudulent act is any act characterized by dishonesty in fact or unfair dealing. *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002). The fraudulent act must be separate and distinct from the acts constituting breach, must accompany the breach, and must not be too remote in either time or character. *Smith v. Canal Ins. Co.*, 269 S.E.2d 348, 350 (S.C. 1980).  Mere breach of a contract does not constitute fraud. *Davis v. Upton*, 157 S.E.2d 567, 569 (S.C. 1967).

Defendants argue that Defendants B&C and MBF cannot be held liable for breach of contract accompanied by a fraudulent act because there is no contract between Lowes and B&C or MBF. However, for the reasons stated above, the Court finds there is a question of fact as to the

11

existence of a contract between Lowes and B&C and MBF.

Defendants also argue there is no fraudulent intent and no fraudulent act separate and apart from the alleged breach itself. In response, Lowes argues that Defendants found out at least as early as May 2014 - over five months before the New Development and Publix were announced - that LStar intended to develop a grocery store on the site of the New Development. Then, Lowes alleges, in July of 2014 Defendants communicated with LStar about the new grocery store, and shared the Lowes Lease and radius restriction with LStar. Lowes contends that Defendants' silence upon learning of LStar's intentions to develop a grocery store constituted a fraudulent act separate and apart from the breach of the Lease Agreement.

"Failure to speak when fair dealing requires one to do so may amount to a suppression of a fact which should have been disclosed, and constitute a fraud." *Gardner v. Nash*, 82 S.E.2d 123, 127 (S.C. 1954). The fraudulent act supporting a breach of contract accompanied by a fraudulent act claim may be any act characterized by dishonesty in fact or unfair dealing. *Conner*, 560 S.E.2d at 612. Lowes has alleged that Defendants breached the Lease Agreement by "failing to protect Lowes from a competing grocery store in the manner required by the Lease," i.e. failing to include restrictive language in deeds to property sold within the radius restriction. Although weak, viewing the evidence in the light most favorable to Lowes, Defendants' alleged subsequent silence upon learning of the New Development, after failing to include restrictive language to protect Lowes, could arguably evidence fraudulent intent and constitute an act of dishonesty or unfair dealing separate and apart from the breach of the Lease Agreement. Accordingly, Defendants are not entitled to summary judgment on the breach of contract accompanied by a fraudulent act claim.

III. <u>South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140</u>

Lowes alleges that Defendants' actions violated the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140. Specifically, Lowes claims that "Defendants willfully and knowingly engaged in unfair and deceptive acts by, among other things, allowing the sale of property to LStar without protecting Lowes's rights and interests as reflected by Section 7.4.3 of the Lease." [Complaint, ECF No. 1 at ¶ 57].

In order to bring an action under SCUTPA, the plaintiff must allege: 1) that the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; 2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's unfair or deceptive act, and 3) that the unfair or deceptive act had an adverse impact on the public interest. *See* S.C. Code Ann. § 39-5-140; *Daisy Outdoor Advertising Co., Inc. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004). The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts. *Singleton*, 595 S.E.2d at 466. "[C]onduct which only affects the parties to the transaction provides no basis for a UTPA claim." *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994).

Defendants argue that Lowes's SCUTPA claim should be dismissed because Lowes has failed to establish that the alleged unfair or deceptive acts impact the public interest. Lowes argues that Defendants' conduct affects the public interest because members of the Myrtle Beach community have a vested interest in thriving retail businesses and in avoiding the over-saturation of grocery stores and shopping centers in their neighborhood. Lowes further argues that by failing to

protect Lowes's interest in the radius restriction, Defendants have threatened the continued operation of the Lowes store, and thus compromised the future viability of the other stores located in the shopping center. Lowes also contends that Defendants' actions have the potential for repetition in that Defendants are major property developers in the southeastern United States and are frequently involved in the sale, acquisition, and development of large amounts of land in South Carolina.

Despite Lowes's arguments to the contrary, Defendants are entitled to summary judgment on the SCUTPA claim. Lowes's argument that Defendants' conduct affects the public interest because members of the Myrtle Beach community have a vested interest in thriving retail businesses and avoiding over-saturation of grocery stores is too speculative to establish an affect on the public interest. Similarly, the possible compromised viability of the other stores located in the shopping center with Lowes is too speculative to establish an affect on the public interest. Lowes has not cited to any evidence in the record that could arguably create a question of fact as to whether Defendants' alleged conduct affected the public interest. The evidence merely establishes a private dispute between commercial parties. Viewing the evidence in the light most favorable to Lowes, Defendants are entitled to summary judgment on Lowes's SCUTPA claim.

## Conclusion

For the reasons stated above, Defendants' [ECF No. 73] motion for summary judgment is **GRANTED** on Lowes's SCUTPA claim. Defendants' motion for summary judgment is **DENIED** as to Lowes's claims for Breach of Contract and Breach of Contract Accompanied by a Fraudulent Act. Plaintiff's [ECF No. 71] motion for summary judgment as to the Breach of Contract claim is **DENIED**. Lowes has withdrawn its claim for Fraud in the Inducement. This case will proceed to trial on Lowes's claims for Breach of Contract and Breach of Contract Accompanied by a Fraudulent

Act against Defendants Grand Dunes Development Company, LLC ("GDDC"), Burroughs & Chapin Company, Inc. ("B&C"), and Myrtle Beach Farms Company, Inc. ("MBF").

 IT IS SO ORDERED.

January 25, 2019               s/ R. Bryan Harwell
Florence, South Carolina           R. Bryan Harwell
                      United States District Judge